Kaye, J.
(dissenting). The majority concludes that a designated felony petition must be dismissed under Family Court Act § 340.1 because, after respondent failed to appear for the fact-finding hearing and a bench warrant for his arrest was issued, the presentment agency and the Family Court did not calendar and adjourn the case at successive 30-day intervals during the period of his absence. I cannot agree that this result is required by section 340.1 or any other section of the Family Court Act, or indeed by sound considerations of policy, and I therefore must dissent.
There is no question that a juvenile prosecuted under a designated felony petition has a right to a speedy fact-finding hearing. A respondent who has been paroled, like Randy K., is entitled to have that hearing commence not more than 60 days after the conclusion of his initial appearance (Family Ct Act §§ 310.2, 340.1 [2]). Likewise, there is no question that the statutory provisions are intended to assure swift and certain adjudication of delinquency proceedings (Matter of Frank C., 70 NY2d 408, 413).
But those principles, while undisputed, do not answer the question presented by this case: what procedural consequences flow from a respondent’s failure to appear at a scheduled fact-finding hearing and the issuance of a bench warrant?
The statute itself does not answer that question.
Section 340.1 provides that, for a paroled respondent, "the fact-finding hearing shall commence not more than sixty days after the conclusion of the initial appearance except as provided in subdivision four.” (Family Ct Act § 340.1 [2].) Under subdivision (4), the court may adjourn the hearing on its own motion, the presentment agency’s motion, or the respondent’s motion for good cause shown for not more than 30 days (Family Ct Act § 340.1 [4] [a], [b]). Other specific provisions apply when the respondent has committed a homicide or other crime which incapacitated the victim, or where the case is adjourned in contemplation of dismissal (Family Ct Act § 340.1 [4] [a], [c]). The court must state the reasons for any adjournment on the record (Family Ct Act § 340.1 [5]). The court can grant successive adjournment motions only when there is a showing on the record of special circumstances; "calendar congestion or the status of the court’s docket or backlog” may not constitute special circumstances (Family Ct Act § 340.1 [6]).
As seems plain from reading these provisions, together with *407 the Commentary that surrounds the statute, section 340.1 is addressed to delays within the system, and not at all to delays occasioned solely by the respondent’s own flight. As the Appellate Division correctly observed in Matter of Jerome S. (157 AD2d 286, 291): "The adjournment provisions of the statute were intended to function as a means of forestalling unwarranted delay, not as a sword to be employed by a respondent who delays the proceeding and then subsequently argues that it must be summarily dismissed as a consequence.”
Indeed, we have recognized that section 340.1 was intended to address all sources of delay within the system, not just those connected with the presentment agency, and that such delays can justify dismissal of the petition (Matter of Frank C., 70 NY2d, supra, at 414). Our interpretation was premised on the statute’s specific exemption of "calendar congestion or the status of the court’s docket or backlog” from the special circumstances justifying successive adjournments (Family Ct Act § 340.1 [6]). A respondent’s failure to appear is not delay within the system.
Nor does any other provision of article 3 of the Family Court Act indicate that the Legislature considered that it was addressing the procedural consequences of a respondent’s failure to appear, although such a provision might logically have been included in a number of places other than section 340.1 — for example, section 310.2 (providing that a respondent has a right to a speedy hearing); section 312.2 (5) (giving the court authority to issue a bench warrant when a respondent fails to appear); or section 320.5 (3) (authorizing the court to direct detention of a respondent when it finds a substantial probability that he will not return to court on a scheduled date).
The legislative history of article 3 is equally barren of support for the majority’s conclusion. That history indicates that the Legislature’s objective in enacting the law was to codify the substantial changes that had taken place in the decisional law in the 20 years since enactment of the Family Court Act. It was expected that, by so doing, the article would make the law more comprehensible, and thereby assure "the delivery of swift and certain justice in a Family Court juvenile delinquency proceeding” (Mem in support of A-7974-A, Bill Jacket, L 1982, ch 920). There is no reference in the history to the possibility that that expectation might be thwarted by respondents not appearing. The legislation was opposed by *408 both the Office of Court Administration and the Association of Judges of the Family Court of the State of New York on the ground that the time constraints of section 340.1 were unrealistic and would cause hardship. No one mentioned the possibility of dismissal of cases based on a respondent’s failure to appear.
The failure of the Legislature to have considered the absconding respondent is perhaps not surprising. Article 3 was enacted in 1982 (L 1982, ch 920). Not until 1984 did the Legislature adopt a provision specifying that time after a bench warrant has been issued following an adult’s failure to appear in a criminal case is not includable for speedy trial purposes (CPL 30.30 [4] [c]; see also, Bellacosa, 1984 Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 30.30, 1991 Supp Pamph, at 62). Thus, it appears that in 1982, when the relevant provisions of the Family Court Act were enacted, the Legislature had not considered the problem of speedy trial requirements where a bench warrant has been issued in either the adult or the juvenile context.
Lacking any indication that the Legislature did — or does— in fact intend that proceedings should be dismissed in these circumstances, we should resolve the question in light of the purposes of article 3, which are "the needs and best interests of the respondent as well as the need for protection of the community” (Family Ct Act § 301.1).
The majority contends that its interpretation of the statute is a necessary one to protect juveniles like respondent, for otherwise such proceedings could "languish in the docket of Family Court,” with no incentive on the agency’s part to proceed and no responsibility on the court’s part to monitor the case (majority opn, at 404). But the record here paints a quite different picture, and suggests that the majority’s fears are ill founded. This respondent was located twice and brought back to court involuntarily so that the proceeding could go forward.
Nor is a juvenile respondent alone in the system, powerless to prevent a case from languishing. A Law Guardian must be appointed at the initial appearance to represent the respondent throughout the case unless independent legal representation is available (Family Ct Act § 320.2 [2]). While a juvenile may "simply forg[et] about” a court date, as the majority suggests happened here (majority opn, at 403, n 1), the Law Guardian should not permit — and it is part of the Guardian’s *409 function not to permit — the case to languish because of the respondent’s forgetfulness or for any other reason.
Far from advancing the needs and interests of juveniles such as respondent, the rule announced by the majority actually disserves their interests. It seems far less likely that juveniles such as respondent who have already failed to appear once will be paroled pending fact-finding hearings. This case illustrates why. A first bench warrant was issued for respondent after he failed to appear on February 17, 1988, when the designatéd felony petition was filed. Respondent was brought back involuntarily on May 26, arraigned on the petition and paroled again, even though at that point the court could have ordered him held in detention because of his earlier failure to appear (Family Ct Act § 320.5 [3] [a]). Had the court done so, there would have been no speedy trial reason to dismiss the petition. After our decision, Family Court Judges will likely direct detention rather than risk dismissal.
The majority’s assumption that permitting such juveniles to avoid resolution on the merits serves their interests overlooks the purpose behind juvenile delinquency proceedings. Unlike criminal prosecutions, punishment is not a purpose of such proceedings (Family Ct Act §352.1 [2]; § 353.5 [2]; Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 350.1, at 495-497). Family Court Judges have a wide choice of dispositional alternatives designed to serve juveniles’ needs. We have no basis whatever to assume that these alternatives do not do exactly that, and that releasing a respondent because of his own failure to appear is a superior alternative.
Finally, it must be noted that the respondent’s interest is not the only one to be considered here.
The majority opinion imposes upon Family Court a duty to monitor cases where respondents do not appear. How that duty should be discharged is unclear, for the majority fails to specify what steps will satisfy its monitoring requirement. Will it be sufficient for the presentment agency simply to state, at 30-day intervals, that it is continuing efforts to locate the respondent and requires a further adjournment? Such a procedure may rightly be called an "essentially empty act * * * adding paperwork and calendar congestion for little practical effect” (Besharov, 1989 Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 310.2, *410 1991 Cum Ann Pocket Part, at 69). Or is there now to be a full-scale hearing every 30 days, with Family Court having to hear witnesses and make findings as to whether sufficient efforts have been exerted to locate the respondent? With approximately 3,000 outstanding juvenile warrants in New York City alone, such a requirement should not be lightly implied.
While the majority opinion makes no mention of it, the Family Court Act also mandates that the community’s need for protection be considered in any juvenile delinquency proceeding (Family Ct Act § 301.1). That need is ill served by a rule which permits respondents to evade the law by their own acts or omissions — a rule which, since announced less than a year ago by the Appellate Division, will apparently require dismissal of more than 100 cases (Matter of Miguel B., NYLJ, Feb. 28, 1991, at 26, col 1).
I would reverse the Appellate Division order, and reinstate Family Court’s determination committing respondent to the supervision of the Division for Youth.
Judges Simons, Alexander and Titone concur with Judge Hancock, Jr.; Judge Kaye dissents and votes to reverse in a separate opinion in which Chief Judge Wachtler and Judge Bellacosa concur.
Order affirmed, without costs.